UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BANNUM, INC.,

    Plaintiff,

        v.	Civil Action No.  05-858 (JDB)

DISTRICT OF COLUMBIA,

    Defendant.

### ORDER

      Pending before the Court in this civil action is the application of plaintiff Bannum, Inc., for a temporary restraining order ("TRO") to prevent defendant the District of Columbia from "taking any action to prevent or hinder Bannum from operating its [Community Correction Center ("CCC")] facility at 2210 Adams Place, N.E.," in Washington, D.C.[1]  See Pl.'s Mem. in Supp. of Renewed Mot. for TRO at 8.  The immediate impetus behind this application is an order issued by the District of Columbia Superior Court on March 23, 2006, (hereinafter "Order to Vacate") that requires Bannum to vacate the premises at 2210 Adams Place by not later than April 2 -- that is, three days from this date.  In short, Bannum is asking this Court to issue an order that effectively would void or overrule the Order to Vacate (and, indeed, if Bannum's application is read literally, the requested order would *enjoin* the D.C. Superior Court) based on the theory that the Order to Vacate contravenes of the due process guarantee of the Fifth Amendment by depriving Bannum of

---

[1] In making its TRO application, plaintiff requests that the Court rescind its stay order of March 24, 2006, for the sole purpose of considering the application.  The Court will treat this emergency TRO application as a limited exception to the stay order.

property interests in its Certificate of Occupancy and in its contract with the United States Bureau of Prisons ("BOP") to operate the CCC at that location.[2]

Even assuming that Bannum has a constitutionally protected interest in the certificate and/or the contract, the folly of Bannum's extraordinary request is nonetheless plain.  Granting the relief sought would be squarely at odds with fundamental principles underlying this nation's system of federalism and also with statutory limitations on this Court's jurisdiction.  On the first point, it is well-settled that, "except in extraordinary circumstances, a federal court should not enjoin a pending state proceeding that is judicial in nature and involves important state interests," see JMM Corp. v. Dist. of Columbia, 378 F.3d 1117, 1120 (D.C. Cir. 2004) (citing Younger v. Harris, 401 U.S. 37 (1971)), and the D.C. Circuit has held that the same rule applies to proceedings of the District of Columbia, id. at 1121-22.  This Court does not accept Bannum's argument that such extraordinary circumstances exist here simply by virtue of its asserted inability to appeal the Order to Vacate or otherwise await the outcome of future state proceedings.[3]  See

---

[2] Both the Certificate of Occupancy and the BOP contract evidently expire on or about May 2, 2006.  See Pl.'s Mem. in Supp. of Renewed Mot. for TRO at 6-7.  The continuing validity of the Certificate of Occupancy, however, is in substantial doubt given that the D.C. Department of Consumer & Regulatory Affairs ("DCRA") has revoked the certificate, Bannum's appeal of that revocation before the D.C. Office of Administrative Hearings ("OAH") is no longer pending, see Pl.'s Suppl. to Mot. for TRO, and the D.C. Court of Appeals has affirmed the decision of the Board of Zoning Adjustments ("BZA") to revoke Bannum's related building permit for the CCC facility, see Bannum, Inc., v. Dist. of Columbia, No. 04-AA-345, slip op. (D.C. Mar. 16, 2006).

[3] Although the Superior Court characterized the Order to Vacate as a "temporary restraining order," it is the nature of the order rather than the label applied to it that will determine whether it is a nonappealable TRO or an appealable preliminary injunction.  See In re Dist. No. 1-Pacific Coast Dist., Marine Eng'rs' Beneficial Ass'n, 723 F.2d 70, 74-75 (D.C. Cir. 1983); see also Geneva Assurance Syndicate, Inc. v. Medical Emergency Servs. Assocs., 964 F.2d 599, 599 (7th Cir. 1992) (per curiam) (observing that "the name which the judge gives the order is not determinative" because, "[i]f it were, a judge could defeat a party's right to appeal by calling a preliminary injunction a temporary restraining order"; "[t]he essence of a temporary restraining

Pl.'s Mem. in Supp. of Renewed Mot. for TRO at 2.  The Court cannot supply what would effectively be an appellate opportunity that, in Bannum's view, it is denied under District of Columbia law.

As for the second, related reason for this Court's refusal to intervene here, Bannum's TRO application appears to cross into jurisdictional territory forbidden to this Court by the so-called "Rooker-Feldman doctrine," which protects the Supreme Court's exclusive jurisdiction to reverse or modify a state-court judgment that conflicts with the constitution or federal law.  Indeed, this application is very close to the "paradigm situation in which Rooker-Feldman precludes a federal district court from proceeding," namely where the losing party in state (or, in this case, District of Columbia) court "repair[s] to federal court to undo [the state court's judgment]."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125 S. Ct. 1517, 1527 (2005); see also id. at 1521-22 (describing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), as a "suit commenced in Federal District Court to have a judgment of a state court, adverse to the federal court plaintiffs, 'declared null and void'"); Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994) ("[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.").  Simply put, this Court cannot and will not act as a *de facto* court of appeals for parties aggrieved by unfavorable decisions in the District of Columbia courts.

Moreover, the record before the Court in this case indicates that other barriers exist to the issuance of the TRO that Bannum seeks.  In order to obtain temporary injunctive relief, the

---

order is its brevity, its ex parte character, and ... its informality").  The Court expresses no opinion on whether the Superior Court Order to Vacate is properly considered a TRO.

movant must demonstrate by clear and convincing evidence that (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable harm absent the relief requested; (3) other interested parties will not be harmed if the requested relief is granted; and (4) the public interest supports granting the requested relief.  Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004). Bannum, however, has not shown that the Order to Vacate will cause it to suffer irreparable harm. Its contention that the order will lead the BOP to declare Bannum in default of its contract to operate the CCC and thus "harm Bannum's ability to obtain future business with its only customer," Pl.'s Mem. in Supp. of Renewed Mot. for TRO at 5, is both speculative[4] and legally insufficient to support a TRO.  Zirkle v. Dist. of Columbia, 830 A.2d 1250, 1256-57 (D.C. 2003) ("[E]conomic and reputational injuries are generally not irreparable.").  Nor does Bannum's claim of expected revenue loss satisfy any of the exceptions to the general rule that "monetary loss does not constitute an irreparable injury."  Lee v. Christian Coalition of America, 160 F. Supp. 2d 14, 31 (D.D.C. 2001) (acknowledging four limited exceptions); Barton v. Dist. of Columbia, 131 F. Supp. 2d 236, 247 (D.D.C. 2001) (stating that economic damages may constitute irreparable injury if the loss "threatens the very existence of plaintiff's business" and plaintiff can demonstrate that his "business could not survive, or even thrive, somewhere else").[5]

Furthermore, to the extent that the most immediate threat to Bannum's property interests

---

[4] Indeed, the "Show Cause Notice" from the BOP that Bannum included with its TRO application demonstrates that the BOP will take into account "whether [Bannum's] failure to perform arose from causes beyond [its] control and without fault or negligence on [Bannum's] part." Pl.'s Mem. in Supp. of Renewed Mot. for TRO, Ex. 2 at 1.

[5] Bannum also attempts to rely on the supposedly irremediable effects on CCC residents that may result from the Order to Vacate.  See Pl.'s Mem. in Supp. of Renewed Mot. for TRO at 5-6.  But that theory runs up against the general prohibition against third-party standing.  See Powers v. Ohio, 499 U.S. 400, 410-11 (1991).

arises out of the BOP's apparent plan to remove CCC residents from the 2210 Adams Place facility by week's end, rather than out of the Order to Vacate itself, there is a serious question as to whether the TRO that Bannum has proposed -- which would not impose any restraint on the BOP[6] -- actually would provide adequate redress for Bannum's anticipated injuries.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (To establish Article III standing, a plaintiff must demonstrate that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision.").

For the foregoing reasons, it is this 30th day of March, 2006, hereby **ORDERED** that [33] plaintiff's application for temporary injunction is **DENIED**.  The stay of all non-emergency proceedings in this case shall remain in effect until the scheduled April 7 status conference.  It is further **ORDERED** that defendant shall respond to plaintiff's motion for a preliminary injunction by not later than April 11, 2006.

/s/ John D. Bates
JOHN D. BATES
United States District Judge

Copies to:

Shawn C. Whittaker
9055 Comprint Court, Suite 340
Gaithersburg, MD  20877
Email: shawn@whittaker-law.com

*Counsel for plaintiff*

---

[6] The BOP is not a party to this action.

Andrew J. Saindon
OFFICE OF ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA
441 Fourth Street, NW, Sixth Floor South
Washington, DC  20001-2714
Email: andy.saindon@dc.gov

    *Counsel for defendant*


Donald M. Temple
TEMPLE LAW OFFICE
1229 15th Street, NW
Washington, DC  20005
Email: TemplePC@aol.com

    *Counsel for intervenor*